UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:20-CV-00088-GNS

JAMES HARRISON MASSSEY                                                                    PLAINTIFF

v.

SPECIALIZED LOAN SERVICING, LLC                                                         DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion to Dismiss (DN 17), Plaintiff's Motion for Leave to File Excess Pages (DN 21), and Plaintiff's Motion for Partial Summary Judgment (DN 22). The motions are ripe for adjudication. For the following reasons, Defendant's Motion to Dismiss and Plaintiff's Motion for Leave are **GRANTED,** and Plaintiff's Motion for Partial Summary Judgment is **DENIED AS MOOT**.

### I.     STATEMENT OF FACTS

On July 15, 2019, Plaintiff James Massey ("Massey") learned that Defendant Specialized Loan Servicing, Inc. ("SLS") had become the service provider for his home equity line of credit, originally held by Bank of America. (Compl. ¶ 2, DN 1). Suspicious of SLS and believing them to be unreputable, Massey requested a payoff statement on August 22, 2019, to terminate his debt. (Compl. ¶¶ 3-4). On August 27, Massey allegedly sent through certified mail a cashier's check for $25,849.76 in satisfaction of the statement amount. (Compl. ¶ 7). He received confirmation that his letter was received at the address listed on SLS's payoff statement on August 30. (Compl. ¶ 8). The next day he received a statement from SLS indicating an amount due on his account, which prompted Massey to contact SLS and inquire into the status of his check. (Compl. ¶¶ 9-10). On September 17, Massey spoke to an employee at SLS about his check, and was told the mail

room would search for it. (Compl. ¶ 10). On September 23, 2019, Massey called his bank, which informed him the check had not been negotiated or cashed. (Compl. ¶ 11). Massey then called an SLS employee who explained the mail room was still conducting a search for the check, and that he would receive a return call the next day. (Compl. ¶ 11). After not receiving a return call, Massey called SLS on September 24 and spoke with an employee named "Ecedro", who was allegedly "unhelpful, wily, shifty, evasive, [and] rude." (Compl. ¶¶ 11-12, Pl.'s Resp. Def.'s Mot. Dismiss 15, DN 18). Massey eventually asked for Ecedro's supervisor or a corporate phone number but Ecedro told him there was no supervisor in the mail room and no corporate headquarters. (Compl. ¶ 12).

Throughout October 2019, Massey continued to receive communications from SLS indicating overdue amounts on his account and repeatedly contacted SLS regarding the check. Bank of America eventually provided Massey with a fax number that allowed him to fax proof of delivery to SLS on October 10. (Compl. ¶¶ 14-17). Due to the ongoing nature of the issue, Massey filed a complaint with the Consumer Financial Protection Bureau, on October 30, 2019. (Compl. ¶ 19). After previous unsuccessful attempts to contact Massey, on November 14, 2019, SLS called him to explain that although they received his proof of the delivery in October they still could not locate his check. (Compl. ¶ 24, Compl. Ex. 14, at 1, DN 1-15).[1] On December 20, 2019, SLS mailed Massey a letter memorializing the November 14 phone conversation, indicating it had requested he acquire a "stop-payment" on the original cashier's check and send a replacement for

---

[1] Massey attached account statements and other documents to the Complaint, which both parties relied upon for the basis of his allegations. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

2

the same amount. (Compl. Ex. 14, at 1). SLS further offered to pay any fees associated with the additional check, agreed to honor the original payoff amount and date of receipt, and assured him they would adjust the credit reporting to reflect no adverse actions. (Compl. Ex. 14, at 1).

Massey never sent a replacement check, however, and eventually defaulted on his debt. On April 2, 2020, he received a Notice of Default and Intent to Foreclose. (Compl. ¶ 30). On June 10, 2020, SLS, through counsel, again requested Massey execute a "stop-pay" on the check and further requested he sign an indemnity agreement.[2] (Pl.'s Voluntary Disclosures ¶ 3, DN 16). Massey claims he had been informed by his bank that the holder of a cashier's check can still negotiate or cash it despite a "stop-pay" and, therefore, he reasonably feared an indemnification agreement would result in his liability to SLS or his bank were the original check later used. (Pl.'s Voluntary Disclosures ¶¶ 4-5). Massey instead requested SLS sign an indemnification agreement, which SLS refused to do. (Pl.'s Voluntary Disclosures ¶¶ 4-5). Massey's bank eventually agreed to "stop payment" on the cashier's check and transferred $25,849.76 into his account on June 16, 2020.

Massey filed this *pro se* action alleging claims for: (1) theft of his financial resources by fraud and deceptive practices; (2) extortion, mail fraud, malicious threats to cause him to suffer financial harm; (3) malicious, deliberate, and intentional infliction of emotional, psychological, and physical distress; (4) maliciously reporting false and derogatory credit information to credit reporting agencies with the specific intent and desire to harm his credit and negatively affect his

---

[2] On July 7, 2020, after SLS sought an extension of time to file an Answer, Massey filed a document entitled "Plaintiff's Voluntary Disclosures": a list of unsworn stipulations supplementing the Complaint regarding the ultimate disposition of his cashier's check. (Def.'s Mot. Extension, DN 9; Pl.'s Voluntary Disclosures). SLS construed Massey's stipulations as a "supplement" to the Complaint and incorporated the allegations into the present motion without Massey's opposition. (Def.'s Mot. Dismiss 5 n.3).

ability to access credit; and (5) malicious and intentional harm to plaintiff's business and plaintiff's business opportunities. (Compl. 4). SLS moved to dismiss, Massey responded, and SLS replied.[3] (Def.'s Mot. Dismiss, DN 17; Pl.'s Resp. Def.'s Mot. Dismiss; Def.'s Reply Mot. Dismiss, DN 20).

## II. JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because Massey is a citizen of Kentucky, SLS is incorporated in Delaware and has its principal place of business in Colorado, and Massey alleges damages in excess of $75,000. (Compl. 3-4).

## III. DISCUSSION

Motions pursuant to Fed. R. Civ. P. 12(b)(6) require the Court "to construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citation omitted). "Pleadings and documents filed by *pro se* litigants are to be 'liberally construed,' and a '*pro se* complaint, however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers.'" *Chenault v. Univ. of Ky.*, 607 B.R. 300, 305 (Bankr. E.D. Ky. 2019) (citation omitted). "A *pro se* complaint must still 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (citation omitted).

As the Complaint did not reference a legal basis for any claim, SLS's motion anticipated alternative theories for each allegation. Massey's response, however, departs from many of these theories to articulate his view of each claim. "Although this Court recognizes that *pro se* pleadings

---

[3] Massey then moved for leave to file excess pages in his response, which is unopposed and therefore granted. (Pl.'s Mot. Leave Excess Pages, DN 21).

4

are to be held to a less stringent standard . . . this Court is not required to create a claim for Plaintiff." *Watkins v. WLKY*, No. 3:16-CV-285-GNS, 2016 WL 3580788, at *2 (W.D. Ky. June 28, 2016) (citations omitted). Accordingly, the Court will address the claims as articulated in Massey's response.

### A.   Theft

Massey's first claim is "theft of plaintiff's financial resources by fraud and deceptive practices." (Compl. 4). In this regard, he initially asserts "Defendant is guilty of theft of the plaintiff's cashier's check[,]" and cited three criminal statutes as a basis for liability. (Pl.'s Resp. Def.'s Mot. Dismiss 9, 11, 12, 13). Neither party addressed whether a criminal statute can provide civil liability under Kentucky law. Generally, "civil remedies for violations of state criminal statutes are . . . available in Kentucky through . . . [KRS] 446.070 . . . ." *Graham v. City of Hopkinsville*, No. 5:12-CV-23, 2013 WL 2120847, at *11 (W.D. Ky. May 15, 2013). That statute provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." KRS 446.070. The Kentucky Supreme Court has interpreted that statute as providing "a right of action 'only to persons suffering an injury as a direct and proximate result [of a violation]; and then only for such damages as they may actually sustain.'" *Graham*, 2013 WL 2120847, at *11 (alteration in original) (quoting *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 800 (Ky. 2004)).

5

Massey alleges SLSs' actions constituted the crimes of theft by unlawful taking or disposition,[4] theft by failure to make a required disposition of property,[5] and misapplication of entrusted property.[6] In particular, Massey contends SLS took possession of the check intending to deprive him of its value; that SLS intentionally lost the check, failing to make a required disposition; and that Massey entrusted SLS with the check for the purpose of paying off the debt and that any other use was a misapplication of the check. *See* (Pl.'s Resp. Mot. Dismiss 9-14). Massey alleges that after receiving possession of the check in August 2019, SLS claimed the check was lost despite proof that it was received, continued to send account statements despite receiving the check in satisfaction of the debt, and requested a second cashier's check without signing an

---

[4] Under KRS 514.030:

> a person is guilty of theft by unlawful taking or disposition when he unlawfully: (a) Takes or exercises control over movable property of another with intent to deprive him thereof; or (b) Obtains immovable property of another or any interest therein with intent to benefit himself or another not entitled thereto.

KRS 514.030(1).

[5] Under KRS 514.070:

> A person is guilty of theft by failure to make required disposition of property received when: (a) He obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition whether from such property or its proceeds or from his own property to be reserved in equivalent amount; and (b) He intentionally deals with the property as his own and fails to make the required payment or disposition.

KRS 514.070(1).

[6] Under KRS 517.110:

> (1) A person is guilty of misapplication of entrusted property when he applies or disposes of property that has been entrusted to him as a fiduciary, or property of the government or of a financial institution in a manner which he knows is unauthorized and involves substantial risk of loss or detriment to the owner of the property or to a person for whose benefit the property was entrusted.

KRS 517.110(1). Kentucky courts have yet to apply KRS 446.070 to this crime.

indemnity agreement to protect his bank or himself from liability on the original. (Pl.'s Resp. Def.'s Mot. Dismiss 9-10). Massey asserts this conduct proves an intent to take his first check (1) for personal use after receiving a replacement, (2) to keep his line of credit alive to realize a return on its investment, and/or (3) to induce or convince him to pay additional sums of money he did not owe. (Pl.'s Resp. Def.'s Mot. Dismiss 13, 21).

In this instance, each of the claims rise and fall together, as each requires Massey to allege he was disposed of property. *See* KRS 514.030(1)(a) ("[t]akes or exercises control over movable property . . . ."); KRS 514.070(1) ("He obtains property . . . . [and] deals with the property as his own . . . ."); KRS 517.110(1) ("applies or disposes of property . . . ."). Massey acknowledges in his Complaint, however, that SLS never cashed or negotiated the cashier's check, and further concedes the funds represented by the check were restored to his account by his own bank. Massey, therefore, fails to articulate an injury suffered "as a direct and proximate result [of any violation] . . . ."[7] *Graham*, 2013 WL 2120847, at *11 (alteration in original) (internal quotation marks omitted) (citation omitted). Accordingly, Massey has failed to state a claim under KRS 446.070 for theft of his cashier's check.

**B.** **Fraud**

Massey further claims SLS engaged in "Deception" by the "theft of plaintiff's financial resources by fraud and deceptive practices." (Compl. 3; *see also* Pl.'s Resp. Def.'s Mot. Dismiss 14). Though vague, the Court will interpret the claim as common law fraud, which SLS has addressed. "A party claiming fraud must establish six elements by clear and convincing evidence:

---

[7] Massey failed to allege that SLS dealt with the check as its own as proscribed by KRS 514.070, as it never cashed or negotiated the check. Finally, regarding KRS 517.110, Massey merely stated, "[a]ny use of the check, for any reason other than for the payoff of plaintiff's [debt] amounted to a misapplication" but failed to allege SLS applied or disposed of his check as the original check was never negotiated. (Pl.'s Resp. Def.'s Mot. Dismiss 11).

a) material representation, b) which is false, c) known to be false or recklessly made, d) made with inducement to be acted upon, e) acted in reliance thereon, and f) causing injury." *Farmers Bank & Tr. Co. v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) (citation omitted). "Rule 9 requires the plaintiff to plead the who, what, when, where, and how of the fraud." *V-Soft Consulting Grp., Inc. v. Logic Corp.*, No. 3:16-CV-425-DJH, 2017 WL 1228402, at *7 (W.D. Ky. Mar. 31, 2017) (citation omitted).

Massey argues SLS stole the cashier's check and then "secreted it away, or misappropriated it, under a premeditated scheme to convert the check to the defendant's own personal use, in addition to extorting additional money from the plaintiff."[8] (Pl.'s Resp. Def.'s Mot. Dismiss 16). The principle is well-settled that "[f]raud without damage is, of course, not actionable." *Curd v. Bethell*, 58 S.W.2d 261, 263 (Ky. 1932) (citation omitted); *see also TWB Distrib., LLC v. BBL, Inc.*, No. 3:08-CV-509-S, 2009 WL 5103604, at *9 (W.D. Ky. Dec. 19, 2009). Accordingly, like Massey's theft claims, his fraud claim fails because SLS never "convert[ed] the check to [its] own personal use", as it was never cashed or negotiated.[9] *Cf. In re Sutton*, 557 B.R. 831, 836-38 (Bankr. N.D. Ga. 2016) (allowing fraud on a motion to dismiss where the defendant received a replacement cashier's check by falsely claiming he lost the original, and *later refused to refund the replacement*

---

[8] Massey also references SLS's initial denial that it received the check, and its later claim that it had received the check but that it was either stolen, lost, or misplaced, as "overly suspicious and inexplicable behavior" that not only "warrant drawing the reasonable inference that the defendants stole the plaintiff's cashier's check", but factually proves SLS stole it. (Pl.'s Resp. Def.'s Mot. Dismiss 16). Again, these facts were not pleaded in the Complaint and will be ignored.

[9] Massey also fails to plead he relied to his detriment after SLS claimed it lost the check and requested he send another. "Where the party claiming to be defrauded did not believe what was told him by the other party or did not act upon it, he can not recover." *Snyder v. Rhinehart*, 118 S.W.2d 543, 547 (Ky. 1938); *see also Gooch v. E.I. DuPont de Nemours & Co.*, 40 F. Supp. 2d 857, 861 (W.D. Ky. 1998). In the end, Massey refused to acquiesce to SLS's alleged "premeditated scheme".

*amount when his bank was required to honor the original*). Accordingly, Plaintiff's fraud claim is dismissed for failure to state a claim.

### C. Extortion

Plaintiff's second claim arises under KRS 514.080, "Theft by extortion", which provides:[10]

> A person is guilty of theft by extortion when he intentionally obtains property of another by threatening to:
> (a) Inflict bodily injury on anyone or commit any other criminal offense; or
> (b) Accuse anyone of a criminal offense; or
> (c) Expose any secret tending to subject any person to hatred, contempt, or ridicule, or to impair his credit or business repute; or
> (d) Use wrongfully his position as a public officer or servant or employee by performing some act within or related to his official duties, either expressed or implied, or by refusing or omitting to perform an official duty, either expressed or implied, in a manner affecting some person adversely; or
> (e) Bring about or continue a strike, boycott, or other collective unofficial action, if the property is not demanded or received for the benefit of the group in whose interest the actor purports to act; or
> (f) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense.

KRS 514.080(1). Massey argues that once SLS received the cashier's check in satisfaction of his debt, it crafted the narrative of a lost check, and that "any and all acts . . . that the defendant did or engaged in . . . whether successful or not successful in their execution, to compel, force, persuade, convince, or otherwise motivate the plaintiff against his free will to stop pay on the . . . cashier's check, or to pay any amount of money . . . more than the $25,849.67 already paid by the plaintiff, or to provide the defendant with an additional cashier's check . . . clearly satisfy all of the elements

---

[10] The Complaint lists claims for "[e]xtortion, mail fraud, malicious t[h]reats to cause plaintiff to suffer financial harm." (Compl. 4). Massey failed to address the mail fraud claim in his response, and therefore, this claim is dismissed. *See Reitz v. Ford Motor Co.*, No. 3:16-CV-00765-CRS, 2019 WL 4675387, at *6 (W.D. Ky. Sept. 25, 2019). Likewise, Massey does not explain the meaning of "malicious t[h]reats to cause plaintiff to suffer financial harm . . . ." Instead, he merely cites KRS 514.080; accordingly, the Court interprets this second claim as theft by extortion.

9

of a cause of action for extortion . . . ." (Pl.'s Resp. Def.'s Mot. Dismiss 17; *see also* Pl.'s Resp. Def.'s Mot. Dismiss 21).

Massey's claim that SLS threatened him for a second check fails, like those above, because he did not send a second check, and therefore, was not deprived of his property.[11] Massey also asserts a claim for "maliciously reporting false and derogatory credit information to credit reporting agencies with the specific intent and desire to harm plaintiff's credit and negatively affect plaintiff's ability to access credit." (Compl. 3). Massey's response asserted this claim was made under the Fair Debt Collection Practice Act ("FDCPA") but did so only as further evidence of extortion. (Pl.'s Resp. Def.'s Mot. Dismiss 24 ("Breach of FDCPA amounted to extortion on the part of the defendant.")). Massey's claim that Defendant threatened wrongful credit reporting, however, fails to satisfy the crime of extortion.[12] *See Caudill Seed & Warehouse Co. Inc. v. Jarrow Formulas, Inc.*, No. 3:13-CV-82-H, 2013 WL 4048541, at *8 (W.D. Ky. Aug. 9, 2013) ("[The plaintiff] contends that [the defendant], threatened 'economic injury' by 'continuing to withhold

---

[11] To the extent Massey seeks to infer SLS threatened to steal the check to extort him out of more debt, he must allege SLS intentionally lied about losing the check rather than mistakenly lost it. *See Smith v. Peyman*, 93 F. Supp. 3d 738, 746 (E.D. Ky. 2015) ("[T]heft offenses in KRS Chapter 514 require . . . specific intent to 'deprive another of his property' . . . ."). Massey alleges SLS acknowledged receiving the check. Massey ultimately alleges, however, SLS agreed to honor the original pay off date, adjust his credit score, and *cancel any debt as a result of its mistake*. Massey's entire allegations, therefore, do not support his conclusory assertion that SLS lied about losing the check as a ploy to run up his debt. *See W. Diamond LLC v. Barnes*, No. 4:12-CV-00028-JHM, 2013 WL 253281, at *3 (W.D. Ky. Jan. 23, 2013) ("Because the counterclaim does not even create an inference that Plaintiff had the requisite intent to deceive Defendants, it cannot withstand this motion to dismiss."); *see also Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 238-39 (1st Cir. 2013) ("But the allegations that the bank acted to correct its initial errors, and eventually sent [the plaintiff] . . . a [correct form], paint a picture of an unthinking and sloppy institution, rather than one that acted with an improper purpose[,] . . . [even though] the allegations in the complaint describing the bank's dilatory conduct . . . [support] a breach of the contract [claim] . . . ." ).
[12] SLS initially interpreted this as a claim pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, but Massey explicitly stated in his response that "FCRA Section 1681s-2(b), simply does not apply in this case." (Pl.'s Resp. Def.'s Mot. 33).

from [the plaintiff] its proprietary and confidential information if [the plaintiff] refused to sign the requested waiver.' The facts in [the] complaint do not allege a threat that falls within the enumerated threats prohibited under Kentucky extortion law."). At most, Massey alleges SLS threatened a breach of contract by failing to honor his original check, and then allowed his debt to accrue. The commentary to KRS 514.080 explicitly excludes threatened breaches of contract, however. *See* KRS 514.080 cmt. (citing Model Penal Code § 206.3 cmt. (Am. L. Inst., Tent. Draft No. 2, 1954)). Accordingly, Massey has failed to state an extortion claim under any theory.

### D. <u>Outrage</u>

Massey's next claim is for the tort of outrage. (Compl. 3). Massey argues he suffered severe emotional distress from having his life savings stolen, receiving threats of foreclosure and delinquency notices for a debt he did not owe, and being pressured to pay money he did not owe.[13] (Pl.'s Resp. Def.'s Mot. Dismiss 28). A plaintiff must allege the conduct was outrageous and intolerable and offends against the generally accepted standards of decency and morality. *See Stringer*, 151 S.W.3d at 788. The Court "make[s] the initial determination whether the conduct complained of can reasonably be regarded as so extreme and outrageous as to permit recovery." *Whittington v. Whittington*, 766 S.W.2d 73, 74 (Ky. App. 1989). Courts have "set a high threshold for IIED/outrage claims . . . ." *Stringer*, 151 S.W.3d at 791. Massey's commercial dispute, however, does not rise to the level of outrageous conduct. *See id.* at 790 ("Outrageousness has been found lacking . . . where the defendant . . . refused to pay medical expenses arising out of an injured worker's compensation claim[,] . . . committed 'reprehensible' fraud during divorce proceedings by converting funds belonging to his spouse for the benefit of defendant and his

---

[13] In addition, Massey again references facts not raised in the Complaint. (*See* Pl.'s Resp. Def.'s Mot. Dismiss 27-28, 33).

adulterous partner[,] . . . [and] . . . wrongfully terminated the plaintiff . . . ." (citations omitted)). Massey has failed to state a claim for outrage under Kentucky law. *See Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 805 (6th Cir. 1994) (noting that Kentucky law relies on the Restatement (Second) of Torts and a claim for outrage "is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" (quoting Restatement (Second) of Torts § 46 cmt. d)). In this instance, Massey's claim that SLS received then lost his cashier's check might reflect sloppy business practices but falls far short of what Kentucky law requires for the tort of outrage.

### E. Punitive Damages

The Complaint purports to assert a fifth claim of "malicious and intentional harm to plaintiff's business and plaintiff's business opportunities", later asserting it as a claim for punitive damages. (Compl. 3; Pl.'s Resp. Def.'s Mot. Dismiss 28). Massey fails to clarify the basis of his claim, and instead merely relies on Kentucky's punitive damages statute. "[P]unitive damages claims are not separate causes of action, but are means of obtaining damages derivative of particularly offensive unlawful conduct proved through underlying causes of action." *Caudill Seed & Warehouse Co. Inc.*, 2013 WL 4048541, at *8. As Massey's underlying claims fail, so does his punitive damages claim.

Based upon the foregoing, SLS's motion to dismiss is granted.[14]

---

[14] As result, Massey's Motion for Partial Summary Judgment (DN 22) is moot.

## IV. CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendant's Motion to Dismiss (DN 17) is **GRANTED**, and Plaintiff's claims are **DISMISSED**.

2. Plaintiff's Motion for Leave to File Excess Pages (DN 21) is **GRANTED**.

3. Plaintiff's Motion for Summary Judgment (DN 22) is **DENIED AS MOOT**.

4. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

January 28, 2021

cc: counsel of record
Plaintiff, *pro se*